## LIZZIE HAMILTON *v.* A. H. HOMER et al.

1. EJECTMENT — "LEGAL REPRESENTATIVE" — PURCHASER OF TITLE OF PLAINTIFF IN EJECTMENT IS NOT "LEGAL REPRESENTATIVE." — The purchaser, at execution sale of the title of the plaintiff, in a pending action of ejectment, to the *locus in quo,* is not the "legal representative" of the plaintiff, who has died, within the meaning of the statute on that subject, and an order of court admitting such person as plaintiff to prosecute the action as the "legal representative" of the deceased plaintiff, may be taken advantage of at the time of the trial, and the suit, on motion, be abated for want of a proper plaintiff.

2. IN COURTS OF LAW NO DIVISION OF COSTS, BUT LOSING PARTY IS TAXABLE WITH COSTS OF THE SUIT. — In courts of law, the losing party is taxable with the costs of the suit, and where one, not entitled to prosecute a suit when the plaintiff has died, causes the suit to be revived in his name and proceeds to trial, he is chargeable with the costs of the suit.

ERROR to the circuit court of Claiborne county.  ALDERSON, J.

The opinion of the court distinctly narrates the history of this case, and clearly presents the state of facts out of which arises the question decided.

*J. B. Thrasher,* for plaintiff in error.

1. The first error assigned is, that " the court below erred in sustaining an objection to the person of the plaintiff, after the defendant had pleaded not guilty and a special plea to the merits of the actions in bar."

The judgment of the court on motion, *ore tenus,* abating and dismissing the suit *in limine,* for want of a right in the plaintiff to maintain and prosecute the same, after pleading to the merits, and not in abatement is, perhaps, without a parallel in the jurisprudence of this country.  The order of pleading, as laid down by Lord Coke, has, perhaps, been memorized by every well-read lawyer in the country, from which no lawyer or judge of any acquaintance, would think of departing.  It is, 1st. To the jurisdiction of the court; 2d. To the person of the plaintiff and next of the defendant ; 3d. To the count or declaration ; 4th. To the writ ; 5th. To the action of the writ ; 6th. To the action itself, and in bar thereof.  Co. Litt. 303.  This has been settled

as the natural order of pleading, because by this order each subsequent plea admits the former. 7 Bac. Ab. 463, but the Revised Code is perhaps decisive on this point.   Code, 493.

2. The second assignment of error is, "that the court below erred in disregarding the judgment of the Claiborne circuit court, at the December term, in 1869, in which the death of the plaintiff C. D. Hamilton was suggested in said cause," and it appearing to the satisfaction of the court, that the title to the land in controversy had ceased to exist in the plaintiff, and became vested in Lizzie Hamilton, said cause is ordered by the court to stand revived in the name of Lizzie Hamilton, and that she be substituted plaintiff in the case.   This was a solemn judgment of Judge Smiley, the presiding judge of the court, at the December term, 1869, that Lizzie Hamilton had the right to prosecute the suit in her name, the title having become vested in her, to the land in controversy ; and it was not in the power of the presiding judge at a subsequent term of the court in July, 1871, to disregard it, recall it or set it aside.   After the term at which judgment is rendered passes, the power of the court over it is at an end ; the same tribunal cannot reverse it or set it aside.   Rob. Pr. 638 ; Field v. Morse, 8 Harr. ; 1 Smedes & Marsh. 349.

3. That the court below erred in disregarding and overriding the judgment of the court at December term, 1869, substituting Lizzie Hamilton plaintiff for want of appellate power to review and reverse the judgment of said courts, at a subsequent term of the same.   The arguments and authorities referred to in support of the second assignment of errors would seem to be decisive of the third.   But we can see no reason for calling in question the right of Lizzie Hamilton to maintain and to prosecute the suit in her own name, for her individual use.

Judgments had been rendered against Hamilton, and the land in controversy had been levied upon in his life-time, and the executions returned.   Writs of *venditioni exponas*

had been issued upon said lands in his life-time, and the lands advertised by the sheriff for sale at the time of his death on the 26th of March, 1869, thirteen days afterward. The sheriff sold the land, on the 9th of April, 1869, and Lizzie Hamilton became the purchaser at sheriff's sale with her own means at the price of $4,550.

She could purchase the lands of her husband at sheriff's sale, with her own means, even in his life-time and certainly so after his death, when the marriage relations had ceased to exist. Nailor v. Fisk, 27 Miss. 258. Where land or other property is levied upon by the sheriff, and is not sold at the return term, a writ of *venditioni exponas* shall issue, directed to the sheriff to sell the same. See Rev. Code, p. 528, art. 279. When lands and tenements shall be sold by virtue of any writ of execution or other process, the officer making the sale shall, on the payment of the purchase-money, execute to the purchaser a deed of conveyance, which shall vest in the purchaser all the right, title and interest which the defendant had in and to such lands and tenements, says the law. Code, 531, art. 290. The purchaser at sheriff's sale holds the land in fee, and the defendant in the execution becomes his tenant at will, and cannot set up an outstanding title in another. The same rule applies to the person in possession of the lands sold on execution, as tenant of the defendant in execution. 3 Smedes & Marsh. 118.

At the time that the sheriff sold the land in controversy to Lizzie Hamilton, this suit was pending in the name of C. D. Hamilton against the defendants in error as tenants at will for the possession of the land. The sheriff's deed to Lizzie Hamilton shall vest, says the law, in the purchaser, all the right, title and interest which the defendent (Hamilton) had in and to the lands and tenements. Among the rights of C. D. Hamilton in and to the land in controversy was the right to prosecute this suit for the possession of the land. That right vested in Lizzie Hamilton by the sheriff's deed beyond doubt.

This view of the case is sustained by the decision of this

court in the case of Torrance v. Betsey, in which the court decided that it was error to exclude from the jury a deed from the plaintiff, having the legal title at the commencement of the suit.   30 Miss. 129.

The doctrine of relation carries the title of Lizzie Hamilton, purchased at sheriff's sale, 9th of April, 1869, back into the original title of C. D. Hamilton, and incorporates itself into the same, and runs back with it to its original beginning.   Such is clearly the general doctrine of relation and estoppel.   24 Pick. 326 ; 7 Greenl. 100 ; 1 Pet. 664.   This, upon general principles, would most clearly enable the court to revive the suit in the name of Lizzie Hamilton, and to substitute her as plaintiff, as Judge Smiley did do, to prosecute the suit then in court, to recover possession of the land which she had bought under a judgment of the court.

4. The fourth and last error assigned is, that "the court below erred in abating and dismissing said cause on motion, *ore tenus*, after said cause had been revived at December term, 1869, under the twenty-fifth and thirty-fourth articles of the Code, pp. 391, 392, in the name of Lizzie Hamilton."

By the twenty-fifth article of the Code, p. 391, "in case of the death before trial of a sole plaintiff, or of any one of several plaintiffs whose rights do not survive to any other plaintiff, the legal representative of such deceased plaintiff may, by leave of the court, enter a suggestion of such death, and that he is such legal representative, and the action shall thereupon proceed, and the truth of the suggestions shall be tried on the trial of the action together with the title of such deceased plaintiff.   This act of the Code is in point, and *runs on all fours*, with the case at bar, if the words "legal representative" will apply to a purchaser at sheriff's sale.

The thirty-fourth article, p. 392 of the Code, leaves no doubt on this point.   Wherever in this act (says the 34th art.) the words "legal representative" of a deceased party, plaintiff or defendant, occurs in relation to the effect of the death of such party in an action of ejectment, they shall be understood to

mean such heir, devisee or other representative of the deceased person, as upon his death becomes seized or possessed of, or otherwise entitled to, the estate, or interest in the premises in question, of which such deceased person was seized or entitled unto at the time of his death. If the term " or otherwise" entitled to the estate or interest in the premises, will not include a purchaser at sheriff's sale after his death under a levy in his life-time, then the terms "or otherwise" have no meaning. It is clear that Mrs. Hamilton did not acquire title as heir, devisee or other representative of the deceased person, as upon his death becomes seized or possessed of the land. But it is evident that she did acquire title "otherwise," to wit, by purchase at sheriff's sale.

If otherwise does not refer to the acquisition of title in some way, then it has no meaning in the sentence; but it does undoubtedly refer to a title acquired by means not previously specified in the statute, and that without reference to the time of acquiring it. And to hold that the term "or otherwise" will not embrace Mrs. Hamilton's title, would be not only a perversion of human language but of human intellect, and upon every principle the case must be reversed.

*Wm. Sillers* and *T. Y. Berry*, for defendants in error.

In ejectment, to sustain the suit, the plaintiff must have the legal title at the time of the commencement of the action. Lawrissini v. Corquette, 25 Miss. 180, 185; ib. 177; Heard v. Baird et al., 40 ib. 793, 795, 796; 9 Watts, 64. And, in order to recover, the plaintiff must also have the legal title at the time of the trial. Pintard v. Griffing, 32 Miss. 133, 137; Torrance v. Betsy, 30 ib. 129, 132; Chip. 73; 3 Barb. 554. He must have the legal title and the right of possession at the time the action is instituted, 11 Gill. & Johns. 351; 5 Port. 413. He must have the legal title at the time of the trial, as well as at the commencement of the action. 16 Vt. 313; Chip. 37; Adams' Eject. 32, 92.

He must also have a right of action at the time of the final judgment. 17 Vt. 674.

The principle that the plaintiff must have the legal title to, or right of action in, the subject-matter of the suit, from the beginning to the end of the suit *ab ovo usque ad mala*, applies to all actions as well as to the action of ejectment, except so far as expressly modified by statute. And the only modification known to us is, that (Rev. Code, p. 485, art. 42) in favor of choses in action, where, if a transfer is made pending the suit, the transferee may continue to prosecute the suit in the name of the original party, for his use, or the court may allow him to be substituted in the action. This article applies only to suits upon choses in action, and it applies only to cases where the plaintiff himself transfers his interest after suit brought, by sale, assignment or indorsement of the chose in action ; suits for land are not embraced in the article. To say that, in the action of ejectment, the subject-matter of the suit might be transferred by the plaintiff pending the suit, and that his assignee may be substituted in the action and prosecute it, would be to legalize champerty and maintenance. In the case of assignment of suits or choses in action, possession of the subject-matter of the suit goes with the assignment. Not so, however, in ejectment, for there the subject of the suit is in the adverse possession of the defendant. If a plaintiff in ejectment, after action brought, parts with his title, the vendee cannot be substituted so as to enable him to recover ; and so, generally, title acquired by the plaintiff after action brought, will not entitle him to recover; and, also, where one of two plaintiffs conveys his interest to his co-plaintiff, after action brought, such co-plaintiff cannot recover. In all such cases the suit abates, and the assignee must bring his suit *de novo*. 5 Watts & Serg. 427.

A title acquired after the date of the demise cannot sustain an action of ejectment. 3 McLean, 302. A right of entry cannot be transferred where there is an adverse claim. 1 Taylor, 123 ; 6 Munf. 303. Where the defendant is shown

to be in possession at the time of commencing the suit, the presumption is that he held in hostility to the plaintiff. 4 Hill, 116. The record in this case shows, and the plea by the statute (Rev. Code, p. 387, art. 5) admits, that the defendant was in possession of the premises sued for at the time of the commencement of the action. An administrator cannot, as such, maintain ejectment against a tenant in possession of lands of his intestate. 5 Pike, 629.

At common law all actions, real and personal, abated on the death of a sole plaintiff or defendant (Gould's Pl. ch. 5, §§ 90, 91, 94, 95, 96) ; but to remedy this evil special statutes have been passed authorizing revivals in certain cases. Cases, however, not provided for remain as at common law. Portevant v. Pendleton's Admr., 23 Miss. 25 ; Torry et al. v. Robertson, Trustee, etc., 24 ib. 192. It is true, however, that if a sole plaintiff in ejectment die pending suit, proceedings may be continued in the name of the fictitious nominal plaintiff for the recovery of the mesne profits and costs (1 Chitty's Pl. p. 220, 7th Am. ed.) ; and no doubt, under our Code, then in force (p. 388, art. 15) the suit might have been prosecuted in the name of the administrator. of the deceased plaintiff for that purpose, but, as to the recovery of the land, the suit abates, and "the judgment shall be, that the defendant go thereof without day."

All fictions in this action having been abolished, and the suit required to be brought in the name of the person actually claiming the premises. Rev. Code, p. 586, art. 1. It is now subject to the same legal rules as other actions ; and, unless revived in the manner prescribed by the statute then in force (Rev. Code, title Ejectment, pp. 386–494), abates like any other suit on the death of a sole plaintiff. Pintard v. Griffing, 32 Miss. 136, 137. Now, whatever title the appellant may have had at the trial, the record clearly shows that she had none at the commencement of the suit ; and that she claimed the right to revive the suit and to be substituted therein as plaintiff, and to prosecute the same in her own name and for her own individual benefit, solely upon

the ground that the title of the original plaintiff had ceased to exist and had become vested in her as purchaser thereof, at sheriff's sale, since the commencement and during the pendency of the suit. Before a suit instituted by A. can be revived in the name of B. the record must show a state of facts, making it impossible for the original plaintiff to prosecute the suit, and a case proper to be revived in the name of the party seeking the revival. Clifton et al. v. Galbraith and Cooper, trustees, etc., 23 Miss. 292.

Neither consent nor acquiescence can give jurisdiction where it is not authorized by law. Lester v. Harris, 41 Miss. 670; Bell et al. v. Tombigbee Railroad Company, 4 Smedes & Marsh. 563. And it is never too late to raise the objection where the record discloses a total want of jurisdiction in the court below. Green v. Craighton, 10 Smedes & Marsh. 163, § 3. The court must have jurisdiction both of the person and subject-matter, in order to impart validity to its judgments. A Freedman v. Thompson, 41 Miss. 50, 54. And an order, judgment or decree is void where the court rendering it has not the jurisdiction of the subject-matter and of the parties. Both must concur to make the proceedings valid. Commercial Bank of Manchester v. Martin, 9 Smedes & Marsh. 621, § 3; 41 Miss. 50; 1 Pet. 340; 10 ib. 449. In Lake v. Hastings, 24 Miss. 496, this court has well said, that "a party who seeks justice must pursue it according to the forms and remedies prescribed by law, otherwise interminable confusion might be introduced in administering the law. But, in fact, justice cannot be said to be administered unless the law of the land is enforced; for every man has a right to insist upon that in every suit in which his rights are involved, and unless this law is so enforced injustice is done him."

The appellant's counsel, in the court below, rested his right to revive this suit in her name, and to substitute her as plaintiff, and to prosecute the same in her name and for her sole benefit, on article 34, p. 395 of Rev. Code. In that article the term, "legal representative," is defined as used in

the statute.  And that was the first time we ever heard it claimed that the vendee, as such, was the legal representative of the vendor, or that the purchaser of the legal title of the plaintiff in an ejectment suit, at sheriff's sale, as such, was the legal representative of that plaintiff.  The whole context of the section shows that the term, "or other representative," is qualified by the word "legal," and that the class intended to be embraced therein are those, and those only, upon whom there has been a devolution of title by operation of law.  The construction contended for by appellant's counsel violates every rule of just construction, and introduces a new principle in derogation of common law.  Says Lord Coke: "The wisdom of the judges and sages of the law have always suppressed new and subtile inventions in derogation of the common law."  Besides, the term, "or other representative," is confined to such as may be the "representative of the deceased person," and such "as upon his death becomes seized or possessed of, or otherwise entitled to, the estate or interest in the premises in question, of which such deceased person was seized at the time of his death."  Now the record shows that the appellant did not, upon the death of the original plaintiff, become seized or possessed, or otherwise entitled to, the estate or interest in said premises, but that the title she sets up and relies upon accrued a long time thereafter, and was acquired by a purchase at sheriff's sale.  There are persons to whom the term, "or other representative," can and does attach, without stretching it, in violation of every principle of law and correct construction, in order to include such a case as the one at bar, to wit: remainder-men after the termination of the particular estate ; the administrator, etc., of the term, or for years, after his death ; the surviving partner of a partnership holding lands as partnership property ; the surviving husband or wife where lands are conveyed them jointly as husband and wife ; the surviving husband entitled to courtesy in his wife's lands ; the widow entitled to dower, etc. ; an assignee in bank-

ruptcy; and possibly the administrator of an insolvent decedent's estate.

· The appellant's counsel contended, in the court below, as, no doubt, he will contend here, that the order of revival and substitution, made on the 16th day of December, 1869, was a final judgment of the court below, and could not be revised by it after the lapse of the term at which it was rendered; and could only be reviewed and revised by this court. We acknowledge the correctness of the doctrine, in reference to final judgments of the inferior courts, but deny its application to the order in question. We deny that said order was a final order of said court, and insist that it was merely interlocutory; an *ex parte* order, made upon an *ex parte* suggestion, without motion and without notice; a matter *in fieri*, and, as such, under the control and supervision of the court, to modify, vacate or annul it, within its discretion, until after the final termination of the suit in which it was made. Rev. Code, p. 508, art. 180. For, otherwise, there would be two final judgments in the same cause, in the· same court, which is a legal absurdity. But the order shows on its face, and *ex vi termini*, that it was not final; or else, why was there not a judgment for the recovery of the premises in controversy, and an execution thereon; and why did the appellant re-try the case. But, again, the title of the original plaintiff, the right of the appellant as purchaser of that title pending the suit, to prosecute the same, and the death of the original plaintiff (Rev. Code, p. 391, art. 25), were the very facts to be tried by the jury; and yet, according to the contention of appellant's counsel, the court, upon the *ex parte* suggestion of the appellant, without notice to the defendant, and without a motion to bring it to the notice of the court or the defendant, and without the consent of the defendant, assumed the functions of the jury, and decided the whole controversy between the parties,

No judgment, order or decree, rendered without notice, is binding. 41 Miss. 50; 25 ib. 513.

The dockets, prescribed by the statute, to be kept by the courts, were certainly intended for some purpose, to wit, for the purpose of giving notice to the litigants of the progress of the cause, and of the action intended to be asked of the court, and are the means or vehicles by which the matter is brought to the notice of the court for its action ; and the parties are bound to take notice of the entries thereon, but are not bound to take notice of *ex parte* and side bar suggestions, and the entries thereof on the minutes of the court. Whether we regard it as an interlocutory order or a final judgment, it is *sui generis* and *de hors* the pale of all precedents, and is equally null and void, because it violates every principle of the common law, and is authorized by no statutory law, and is a usurpation of power by the court.

A void judgment may be treated as a nullity (Martin v. Williams, 42 Miss. 210), and may be disregarded and impeached, whenever and wherever sought to be enforced, or any benefit is claimed under it (8 Smedes & Marsh. 505, 519 ; 7 ib. 85 ; 6 How. 114 ; ib. 234, 235, and *ib.* 285) ; and may be set aside at any time by the court that rendered it.   4 Smedes & Marsh. 538, and 12 ib. 63, 67.

Let us see, in the next place, if the " order " has any of the characteristics of a judgment.

A judgment is a conclusion of law upon ascertained facts (2 Smedes & Marsh. 535, 539, 540), and where there is no rule of law applicable to the facts, the court can render no judgment.   24 Miss. 377, 380, 381.   A judgment without an issue of law or fact is a nullity (41 Miss. 88, 90 ; 42 ib. 506), and an issue presupposes two parties, plaintiff and defendant, to make it up.

Appellant's counsel will here, no doubt, as in the court below, insist that the objection to appellant's capacity to prosecute the suit as purchaser of the title of the original plaintiff at sheriff's sale should have been made by plea, and the defendants having failed to do so, they thereby waived the objection.   It will be seen from the record that the

*scire facias* issued and ran in her name as the administratrix of the original plaintiff; that, by article 15, p. 388, Rev. Code, she could, as such administratrix, prosecute the suit without amendment, for the purpose of ascertaining who should pay the costs ; and it was to that aspect of the case and to her suit in that capacity, and to appellant's writs of *scire facias* that the appellees plead "not guilty," and which latter plea the appellant relies on as an estoppel. The defendants had a right to suppose that she was such administratrix, and that she intended to prosecute the suit in the only way that she could legally do it, to wit, as such administratrix, and to determine the matter of the costs. She never asked nor obtained leave of the court, nor, in fact, amended the declaration so as to show that she claimed the right to prosecute the suit in her own name and for her sole benefit as purchaser, at sheriff's sale, of the legal title of the original plaintiff.  On the contrary, like the scuttle-fish, she seems purposely to have discolored and confused the record, so that the defendants could not certainly know what position she really intended to assume until she fully disclosed it on the trial ; when they, the appellees, took the only and earliest opportunity to raise and urge the objection ; and she surely ought not to be permitted to take advantage of her own wrong to their prejudice.  As decided in Odom v. Harris, 34 Miss. 411, the appellees could not be required to avoid by plea what the appellant by her pleading had not put in issue, and when she disclosed by her evidence the grounds of her claim to prosecute the suit, they had the right to raise the objection thereto.  Besides all that, by the express provisions of the statute itself and decision of this court, the plea of "not guilty" is the only plea allowed by law to be pleaded in ejectment, which plea denies every thing, admits nothing and waives nothing. Gwin v. Williams, 27 Miss. 333 ; Rev. Code, art. 3, p. 386 ; ib. arts. 27, 28, p. 391, and art. 35, p. 393.  Statutes prescribing forms of procedure or modes of proof must be strictly pursued.  Sedgwick's Const. Law, 319–324.

Under the plea of "not guilty," the defendant can take defense on the trial as to the whole or any part of the land in controversy, on any ground available to him in law. 3 Barr. 365. And the same principle is recognized and expressly provided for in the Rev. Code, then in force, articles 3, 27, 28, 35. The persistency with which these points were urged by appellant's counsel in the court below, and the fact of this appeal, is our excuse for arguing them at greater length than, in our opinion, they deserve.

The only other point remaining is as to the correctness of the judgment against the appellant for the whole costs, and we think as to that also it was correct. Having interloped into the case in a manner and for a purpose not authorized by law ; having announced to the court that she was prosecuting the suit solely in her own individual name, as purchaser, and for her own individual benefit, and thereby, in effect, abating it as to the original plaintiff ; thus presenting herself as plaintiff in an unauthorized form, and having taken the chances of winning, she ought to be compelled to take the risk of losing ; and, having lost, she ought to be punished with the costs for her folly and rashness. She ought not to be permitted seriously to play, in the presence of a court of justice, the game of "heads I win, tails you lose ; tails you lose, heads I win ; " and even attempt to make the court an instrument in her hands for so unfair a game !

TARBELL, J. :

Charles D. Hamilton brought ejectment in the circuit court of Claiborne county, in 1866, against Mary D. Homer, for the recovery of the lands described in the declaration. The defendant pleaded the general issue, a special plea of superior title in equity, and gave notice of various matters of defense not essential to be mentioned. The plaintiff demurred to the second plea, and the demurrer was sustained, with leave to defendant to answer over. At this stage of the case, viz., in 1869, the death of the plaintiff, Hamilton, was suggested, and the record recites that, "it

appearing to the satisfaction of the court, that the title to the land in controversy has ceased to exist in the plaintiff, and become vested in Lizzie Hamilton, it is therefore ordered by the court that this case stand revived in the name of Lizzie Hamilton, and that she be substituted plaintiff in this case." Subsequently the defendant, Mary D. Homer, died, when *scire facias* was issued, reciting the death of the plaintiff, Hamilton, and the revival of the suit in the name of Lizzie Hamilton, and commanding the sheriff to summon Alexander H. Homer and Rose E. Bass to show cause why the suit should not be revived against them as the heirs at law of Mary D. Homer, deceased. Service having been made upon these parties, they appeared, and by special plea adopted the plea and defense interposed by the former defendant. In this situation the cause came on for trial at the July term of the circuit court of Claiborne county, 1871. The plaintiff read to the court and jury the pleadings filed by the original parties, together with the special plea of the present defendants, adopting the plea and defense already filed. The plaintiff then offered to read in evidence a deed from Charles A. Pearson to Charles D. Hamilton, of the land in controversy, to which defendants objected, and the same was then read to the court. The plaintiff then read to the court a deed from the sheriff of Claiborne county to Lizzie Hamilton of the same land, together with the judgments and writs of *venditioni exponas*, and of *fieri facias* upon which it is based, from which it appears that, upon judgments constituting a lien upon the land in suit, obtained against said Charles D. Hamilton, deceased, in his life-time, the said land was sold after his death, and subsequent to the institution of this action the said Lizzie Hamilton becoming the purchaser, and received a deed from the sheriff, when, as above stated, she was substituted plaintiff herein. Upon these facts the counsel for the defendants objected, that the cause could not be further prosecuted for the want of a proper plaintiff, and moved the court, *ore tenus*, that the suit be abated. After argument of counsel

the court ordered the action abated and dismissed at the costs of plaintiff. From this decision of the circuit court, the plaintiff in ejectment prosecuted a writ of error, and assigns here, as grounds of reversing the judgment : 1st. That the objection to the person of the plaintiff could not be taken after the plea to the merits ; 2d. That the court erred in disregarding the order of the court of a prior term reviving the cause in the name of Lizzie Hamilton ; 3d. That, in abating the action, the court assumed appellate powers, reviewing and reversing at a subsequent term an order of a prior term ; 4th. That the court erred in abating the cause on a motion, *ore tenus,* after revival by order of the court.

The order reviving the suit in the name of the present plaintiff was *ex parte,* and this fact disposes of several alleged grounds of error : 1st. Because it was *ex parte.* 41 Miss. 42, 49 ; ib. 210 ; 8 Smedes & Marsh. 505 ; 6 How. 285 ; 12 Smedes & Marsh. 63 ; 2 ib. 535 ; 24 Miss. 377 ; 41 ib. 88 ; 42 ib. 506 ; Bouv. Law Dict., Judgment ; Chit. Gen. Prac., 19, 35, 568. 2d. The substitution of the present plaintiff upon suggestion was a matter of course under art 25, Code, 391, the propriety of such action or the truth of the suggestion being, by said article, directed to be tried upon the trial of the cause, with the title of the deceased plaintiff. Under this article, the order of the court substituting the present plaintiff was not an adjudication of the right of Lizzie Hamilton to prosecute the action. It was merely a provisional substitution, subject to final determination at the trial.

By art. 14, p. 388 of the Code of 1857, it is provided, that, "after issue joined" in ejectment, "the parties shall proceed to trial as in other actions," and "if both parties appear, the question at the trial shall be, whether the plaintiff, or plaintiffs, or either, and which of them, is entitled to recover the possession of the premises in question." According to art. 15, "if it shall appear at the trial that the title of the plaintiff existed, as alleged in the declaration, in such manner that the plaintiff or plaintiffs, or one of them, was,

at the commencement of the action, entitled to recover possession of the premises in question,   *   *   *   but that such title has expired at the time of the trial, the plaintiff or plaintiffs so entitled shall, notwithstanding such expiration, have a verdict according to the fact that he had such right of recovery at the commencement of the action, and shall recover his costs of suit, but as to the premises claimed, the judgment shall be that the defendant go thereof without day." This statute reiterates the teachings of the books, that, in ejectment, the plaintiff must have both the legal title and the right of possession at the time of the commencement of the action and at the trial.

It is enacted in art. 25 of the chapter on ejectment (Code of 1857), from which we have quoted above, that "in case of the death, before trial, of a sole plaintiff,   *   *   *   the legal representative of such deceased plaintiff may, by leave of the court, enter a suggestion of such death, and that he is such legal representative, and the action shall thereupon proceed, and the truth of the suggestion shall be tried on the trial of the action, together with the title of such deceased plaintiff, and such judgment shall follow upon the verdict, in favor of or against the person making such suggestion, as is hereinafter provided with reference to a judgment for or against such deceased plaintiff."

Accordingly, the right of the present plaintiff, Lizzie Hamilton, to prosecute this suit, depends upon whether she is within the phraseology of this statute, the "legal representative" of the deceased plaintiff, in whose stead she was substituted. The term "legal representative" is defined in article 34 of the above statute, regulating the action of ejectment, which article is as follows: " Wherever in this act, the words 'legal representative' of a deceased party, plaintiff or defendant, occurs, in relation to the effect of the death of such party in an action of ejectment, they shall be understood to mean such heir, devisee or other representative of the deceased person, as, upon his death, becomes seized or possessed of, or otherwise entitled to, the estate

or interest in the premises in question, of which such
deceased person was seized, possessed or entitled unto, at
the time of his death."

. The plaintiff in error contends that the words "other
representative," and "otherwise entitled to," embrace, and
are decisive of, the case at bar. In pursuance of art. 25 of
ch. 55, already referred to, counsel suggested the death of
Charles D. Hamilton, the sole plaintiff, and that Lizzie
Hamilton was his "legal representative," the truth of which
suggestion was to be determined upon the trial, "together
with the title of such deceased plaintiff." By the very
terms of this article, only the title of the original plaintiff
could be tried upon the trial, and not that of a purchase of
such title, whether at sheriff's sale on execution or other-
wise. But, is Lizzie Hamilton the "legal representative"
of Charles D. Hamilton, deceased, within the meaning of
the statute? It is clear that she is not. The "legal repre-
sentative" is declared to mean "such heir, devisee or other
representative of the deceased person, as, upon his death,
becomes seized, or possessed of, or otherwise entitled to, the
estate or interest in the premises in question, of which such
deceased person was seized, possessed, or entitled to at the
time of his death." Lizzie Hamilton did not, "upon his
death" become "seized or possessed of, or otherwise en-
titled," to, the estate or interest of the deceased in the prem-
ises in question, but subsequently and by purchase. The
right to prosecute the suit is clearly confined, not only to
such, as "upon his death," became seized or possessed of,
or otherwise entitled to, the estate or interest in the premises
sued for, but to the "representative" of the deceased. And,
to vary the expression, such "representative" must be
"seized or possessed of, or otherwise entitled" to, the estate
in controversy, upon the death of the original plaintiff, and
again, the "representative" only may be "seized or pos-
sessed of, or otherwise entitled" to, such premises. Lizzie
Hamilton, having purchased the title of the deceased plain-
tiff, she was a vendee or purchaser, but not a "legal repre-

sentative," within the meaning of the provisions of the Code under consideration. The judicial signification of the words "legal representatives," in the light of the doctrine of "descent," "succession" and "represention," and the distinction between these, and the term "vendee," are as old and as well defined as the law itself. 1 Steph. Com. 353 ; ib. 357 ; 2 ib. 243 ; 4 Kent's Com., § 65 ; ib., § 67 ; 2 Black. Com. 201 ; Co. Litt. 237 *b ;* Burrill's Law Dic., titles Descent, Representative, Representation, Successio, Succession ; Reeve on Descents, 19.

"Property of lands by descent," says Lord Bacon, "is where a man hath lands of inheritance and dieth, not disposing of them, but leaving it to go (as the law casteth it) upon the heir. This is called a descent of law." Title by descent, or hereditary succession, is directly opposed to that of purchase. 3 Wash. on Real Prop. 4 ; 2 Black. Com. 241 ; Co. Litt. 18 *b.;* Bac. Abr., title Descent ; Burr. Law Dic., title Purchaser. Doubtless there are " other " representatives of a deceased person than the heir or devisee. And the "representative" may be "otherwise" entitled to the estate or interest in the premises in question, than by being "seized or possessed" thereof. But if wrong in these particular views of art. 34, it is certain that a purchaser is not a representative of a deceased party, within the meaning of the chapter of the Code on ejectment, and that only a representative can be permitted by substitution to proceed with the action. Hence, art. 34, Code, ch. 55, is consistent with the immemorial use of terms, and makes no change in this respect, as urged by counsel for the plaintiff in error. In the case at bar, Lizzie Hamilton is not the legal representative of Charles D. Hamilton, deceased. Her acquisition of the title of the latter was by purchase, and not by descent, under the statute, "of descents and distributions," Code, § 14, art. 110, p. 452, and she is not within the provisions of said art. 34, ch. 55, Code of 1857.

The rule of pleading laid down by Lord Coke, and "memorized by every well-read lawyer," is invoked by counsel

for plaintiff in error, as decisive of this case, viz. : 1st. To the jurisdiction of the court; 2d. To the person of the plaintiff, and next of the defendant, etc., each subsequent plea admitting the former.   This rule is as greatly venerated as the memory of its author, but it has no application to the points developed by the evidence : 1st. Upon general rules of pleading, Graham's Pr. ; Stephen's Pl. ; 2d. Because the right of the plaintiff to prosecute is specifically directed to be tried on the trial, art. 25, Code, 391 ; and, 3d. In ejectment, the general denial puts in issue every material right to be established by the plaintiff.

Upon the trial the plaintiff had three points to establish : 1st. The death of Charles D. Hamilton, the original plaintiff; 2d. That the present plaintiff, Lizzie Hamilton, was his "legal representative ;" 3d. The title of the said deceased to the premises in controversy.

The testimony disclosed the fact that Lizzie Hamilton was not the legal representative of Charles D. Hamilton, and that before the trial title had passed out of him.   Upon this state of facts, was the court right in abating the suit?   In addition to our views of the provisions of the Code, regulating the action of ejectment, we need only refer to the well-established rule, that the plaintiff in this action must show title both at its commencement and at the trial.   Art. 15, ch. 55, Code of 1857 ; Adams on Eject., ch. 3, and notes and cases ; 25 Miss. 177 ; 40 ib. 793 ; 32 ib. 133 ; 30 ib. 129 ; Bac. Abr., title "Ejectment."   Art. 25, Code, 319, would seem to contemplate a verdict of the jury upon the " suggestion " of death, etc., but the facts developed were not disputed, and there was no question for the jury.   There was no objection to the course taken on this ground.   In Pintard's lessee v. Griffing, 32 Miss. 133, decided in 1856, there was a plea *puis darrien continuance*, alleging the expiration of the term of the plaintiff, and of all right and title to the premises in litigation, upon which there was a verdict, but, under the present statute, this is regarded as wholly

unnecessary. In abating the action we think the court was clearly right.

A *quære* is propounded by counsel for defendant in error, as to the costs. Were this a case in equity, the costs might be divided, but in a court of law, and as the present plaintiff came into the cause on her own motion, we presume she did so in view of all the responsibilities.

*Judgment affirmed.*